# EXHIBIT A
**Complaint**

Electronically FILED by Superior Court of California, County of Los Angeles on 04/10/2019 11:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by H. Flores-Hernandez,Deputy Clerk
Case 2:19-cv-04761-MWF-SS   Document 1-1   Filed 05/31/19   Page 2 of 17   Page ID #:6
19STCV12389
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Rafael Ongkeko

JEFF A. LESSER, ESQ.
16133 VENTURA BOULEVARD
SUITE 1175
ENCINO, CALIFORNIA 91436-2415
TELEPHONE: (818) 489-5349
EMAIL: JEFFLESSERLAW@GMAIL.COM
BAR #64326

Attorney for Plaintiff,
Janet K. Muradian

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| JANET K. MURADIAN,<br><br>Plaintiffs,<br><br>vs.<br><br>GEICO GENERAL INSURANCE COMPANY, and DOES 1 through 50 Inclusive,<br><br>Defendants. | CASE NO:<br><br>COMPLAINT FOR DAMAGES FOR BREACH OF INSURANCE CONTRACT; BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING<br><br>Jury Trial Requested |

I

### FIRST CAUSE OF ACTION

### (For Breach of Insurance Contract against Defendants,

### Geico General Insurance Company and Does 1 through 30, Inclusive)

COMES NOW plaintiff, Janet K. Muradian, and for a First Cause of Action against defendants, Geico General Insurance Company (Geico) and Does 1 through 30, Inclusive, for Breach of Contract, alleges:

1. At all times herein plaintiff, Janet K. Muradian (hereinafter referred to as "Muradian"), was a resident of the City of Los Angeles, County of Los Angeles, and the State of California, with a residence of 9912 Hayvenhurst Avenue, North Hills, California 91343.

2. At all times herein mentioned, plaintiff, Janet K. Muradian, was the owner of several motor vehicles, all of which were insured pursuant to the insurance policy issued by

Exhibit A
Page 6

1  defendants and each of them bearing Policy #4487-75-26-12, which vehicles included a 2015
2  BMW, a 2015 Mercedes-Benz and a 2010 Land Rover. Each of the subject vehicles, pursuant to
3  the policy issued by defendants Geico, and each of them, were provided with coverage for
4  property damage, liability, comprehensive coverage, collision coverage, vandalism, and other
5  coverages that might apply in the event that any of the insured vehicles became wrecked and
6  damaged.

7      3.    At all times herein mentioned defendants, Geico General Insurance Company,
8  and Does 1 through 30, were companies, the exact form of which is presently unknown to
9  plaintiff, which when said form is ascertained, said Complaint will be amended to reflect the
10 correct form of said companies, which companies were engaged in the business of underwriting
11 and offering for sale to the general public insurance. Plaintiff is informed and believes and
12 thereon alleges that at all times herein mentioned defendants, Geico General Insurance
13 Company, and Does 1 through 30, were authorized to and did engage in the business of
14 insurance in the State of California, and sold in the County of Los Angeles insurance policies
15 pursuant to which performance and payment of benefits would be required in the County of Los
16 Angeles, State of California.

17     4.    That the true names and capacities, whether individual, corporate, associate or
18 otherwise, of defendants Does 1 through 30, Inclusive, are unknown to plaintiff at this time who,
19 therefore, sues said defendants by such fictitious names, and when the true names and capacities
20 of said defendants are ascertained, plaintiff will amend this Complaint accordingly; plaintiff is
21 informed and believes, and therefore alleges, that each of the defendants designated herein as a
22 Doe is responsible in some manner for the events and happenings herein referred to and caused
23 damages thereby to plaintiff as herein alleged.

24     5.    That at all times herein mentioned, defendants, and each of them, were the agents
25 and employees of each of the remaining defendants, and were at all times acting within the
26 purpose and scope of said agency and employment and each defendant has ratified and
27 approved the acts of his agent.
28 ///

COMPLAINT FOR DAMAGES FOR BREACH OF INSURANCE CONTRACT; BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

2

Exhibit A
Page 7

6. That prior to, and on the date of August 23, 2017, plaintiff Muradian was insured pursuant to an insurance policy issued to plaintiff by defendants, Geico General Insurance Company and Does 1 through 30, which policy is identified by Policy #4487-75-26-12, and, thereafter, by Claim #0594341970101010; #0594341970101028; #05943419701101036; #05494341970101044, and #0594341970101051. The subject policy provided coverage to plaintiff's vehicles, including property damage, collision, vandalism, and other causes of physical damage and loss to each of the insured vehicles. The subject contract between plaintiff and defendants and each of them was entered into within the County of Los Angeles, State of California, and payment of benefits due pursuant to the policy that was in effect on the date of each loss, were due and payable in the County of Los Angeles, State of California.

7. Prior to August 23, 2017, plaintiff had paid all premiums due pursuant to the Contract of Insurance to defendants Geico, and each of them, at all times herein relevant, and plaintiff had performed all obligations under the Contract of Insurance on her part to be performed, except those obligations, the performance of which had been made impracticable or impossible by the acts and omissions of defendants and each of them.

8. On or about August 23, 2017 plaintiff sustained a loss compensable under the terms of the policy of insurance, to the 2015 BMW and 2015 Mercedes-Benz, when each of the vehicles was struck by another vehicle causing substantial damage to each vehicle.

9. Thereafter, on or about August 18, 2017, plaintiff Muradian's 2010 Range Rover was struck and collided with, resulting in a total damage loss to the 2010 Range Rover, for which a claim was made and which defendant Geico, and defendants 1 through 30, and each of them, agreed was a total loss.

10. On or about August 19, 2017, plaintiff's 2015 BMW and 2015 Mercedes-Benz were damaged by acts of vandalism and the commission of acts of direct physical violence against each vehicle, causing substantial damage to each vehicle for which plaintiff Muradian made claims for each vehicle to defendant Geico, and each of them.

///

COMPLAINT FOR DAMAGES FOR BREACH OF INSURANCE CONTRACT; BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

3

11. At the time of the occurrence of loss, first on July 23, 2017, and then on August 18th and 19th, 2017, the policy of insurance between plaintiff and defendant had sufficient coverage benefits to fully compensate plaintiff for the damages sustained to the vehicles insured by defendants and each of them.

12. Pursuant to the terms of said contract of insurance between plaintiff and defendants, and each of them, plaintiff provided timely notice of loss to defendants and each of them on or after July 23, 2017 and again after August 18th and 19th, 2017.

13. Initially upon presentation of the loss claims of plaintiff to defendants and each of them, including the loss claim for the 2010 Range Rover, which was rendered a total loss due to the extent of the property damage it sustained, defendants and each of them commenced upon the investigation, adjustment and resolution of the claim as required pursuant to the terms of the policy. Plaintiff is informed and believes and thereon alleges that the following as to each of the three insured vehicles occurred:

   A. **2015 Mercedes-Benz S550**

   Despite the report of loss to Geico and defendants and each of them, at no time did Geico prepare an estimate of the property damage to the vehicle as a result of the July 23, 2017 incident. Thereafter, as hereinabove alleged, on August 19, 2017, plaintiff's 2015 Mercedes-Benz was vandalized and sustained significant damage, which, once again, plaintiff is informed and believed defendant, Geico, and defendants and each of them failed to inspect or prepare any Scope and Estimate as to the amount of loss sustained. Defendant, Geico's, adjuster told plaintiff to prepare an estimate as to all damage to the Mercedes, which was in the amount of $24,911.60.

   As hereinafter to be alleged, defendant, Geico, and each of them, thereafter, terminated the acts of any of their adjusters with reference to the vehicle loss claims, directed plaintiff's claim to the SIU or Fraud Unit of defendants and each of them, if they had not already done so, and engaged in a multi-month investigation demanding documents, records and other information, including multiple examinations under oath, all based on the state of mind of defendant, Geico, and each of them, that plaintiff was presenting a false or fraudulent claim and

COMPLAINT FOR DAMAGES FOR BREACH OF INSURANCE CONTRACT; BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

4

seeking payment of benefits to which plaintiff was not entitled to. Thereafter, in or about April, 2018, after defendant, Geico, was unsuccessful in establishing any factual or legal basis to substantiate its fraud claim of state of mind, or to support a finding of a false and fraudulent claim being presented, Geico represented that it would adjust and resolve the claim. Based on the estimate of Western Collision, the total amount of loss was $24,911.60.

B. **2015 BMW-I8**

Despite the 2015 BMW being wrecked and damaged on July 23, 2013, and the loss being reported, and then vandalized on August 19, 2017 with the loss reported, it was only on or about August 23, 2017 that Geico engaged in any investigation, including the preparation of a Scope and Estimate of the damage to the subject 2015 BMW. Plaintiff is informed and believes and thereon alleges that on or about August 23, 2017, Adjuster Kelly Bailey, acting on behalf of defendant, Geico, wrote two estimates, both of which are identified as relating to the 2015 BMW, the first of which lists a total amount of damage to the vehicle in the amount of $5,740.17, and the second, also written on the same date, showing additional damage in the total amount of $19,416.05, for a total of $25,156.22.

Plaintiff, through Western Collision, had determined the loss to the 2015 BMW, from July 23, 2017, to be $20,600.12, and for the vandalism on August 19, 2018 to be $22,506.56, for a total damage amount of $42,600.12.

C. **2010 Range Rover**

As hereinabove alleged, on August 18, 2017, plaintiff's 2010 Range Rover was rendered a total loss, which total loss was agreed to as between plaintiff and defendant, and a total amount loss amount determined. Despite the determination of the total loss amount as between plaintiff and defendant, defendants, Geico, and each of them, failed, refused and continued to refuse for multiple months to make payment of the total loss amount due the plaintiff for this loss, and inasmuch as defendant, Geico, had determined to not pay the total loss amount, demanded that the vehicle be transferred and stored at Loss Parts Lot, an insurance company storage lot, so that defendants, and each of them, could avoid the incurrence of storage charges as to the Range Rover.

14. Plaintiff, based on the condition of the 2015 Mercedes-Benz and the 2015 BMW, as a result of the damage sustained on July 23, 2017, was able to retain the vehicles at the residence and, thereby, did not incur storage costs.

15. However, after the vandalism that occurred on August 19, 2017 as to both the 2015 Mercedes-Benz and 2015 BMW, both vehicles were towed to Western Collision Center, with plaintiff's expectation being that the loss would be investigated, estimates prepared, and the loss paid, and the vehicles repaired. Despite the expectations of plaintiff as to these acts occurring, it was approximately at that time that defendant, Geico, formulated its fraud claim state of mind, and commenced upon a fraud investigation, and continued to fail and refuse to make any payment for damage, storage, or other losses incurred by plaintiff as to each of the vehicles until approximately April, 2018.

16. In or about April, 2018, defendant, Geico, having failed to establish that plaintiff was presenting a fraudulent claim, made a decision, the exact date of which is not currently known to plaintiff, to make payments on this loss.

17. On May 1, 2018, Geico issued a check payment in the amount of $16,206.45, purportedly in payment for the damage and loss sustained by the 2015 Mercedes-Benz, which Geico assigned to the loss date of August 19, 2017, but not to the loss date of July 23, 2017.

18. Also on May 1, 2018, Geico issued its check in the amount of $4,740.17, which it identified as relating to the damage and loss of the 2015 BMW, which damages arose from the incident occurring on July 23, 2017.

19. Thereafter, on May 16, 2018, defendant, Geico, issued its check in the amount of $18,916.05, assigning the loss payment to the date of loss of August 19, 2017, and assigning the payment to the 2015 BMW.

20. Through the date of the filing of this lawsuit, this represents the total amounts of payments made by defendant, Geico, despite requests for, and balances due, for additional amounts that were known to Geico and which were the result of estimates prepared at the request of Geico.

///

1  21.  As hereinabove alleged in Paragraph 13, in or about April, 2018, Allstate's Adjuster, Heidi Siersma requested that plaintiff, through Western Collision, prepare an estimate on the Mercedes-Benz, which was done, with the result as hereinabove alleged, being the total amount of $24,911.60. Against this amount, acknowledged and known to Allstate and prepared at the request of the adjuster of Geico, the only amount paid as relates to this amount is the check issued on May 1, 2018 in the amount of $16,206.45, leaving an unpaid balance in the minimum amount of $8,705.15.

22.  At the time of the initial loss on July 23, 2017, and the second loss on August 19, 2017, both the 2015 Mercedes-Benz and 2015 BMW, were subject to leases which require payments on a monthly basis for each, and based on the loss of use of the BMW and Mercedes-Benz from and after August 19, 2017, plaintiff was required to make monthly lease payments to the leaseholders on the Mercedes-Benz at the rate of $1,330.00 per month, and the sum of $1,800.00 per month to the leaseholder on the BMW. This was required for the Mercedes-Benz through March 15, 2018, and for the BMW through April, 2018. The total rental payments without use or benefit of the Mercedes-Benz was $10,640.00, and for the BMW, $18,000.00.

23.  As to the 2015 Range Rover, as of August 18, 2017, it was declared a total loss and it, too, was a leased vehicle, which required monthly lease payments in the amount of $598.92 to the leaseholder, which payments were required for eight months in the amount of $4,791.36.

24.  Based on the vehicles being leased vehicles, it was necessary for plaintiff to fully repair to near or original condition both the Mercedes-Benz and BMW vehicles prior to a return to the leaseholders, which was required in March and May, 2018, prior to defendants, Geico, and each of them, making any payment as related to any of the damage or costs as to each vehicle.

25.  As a further damage and loss to plaintiff as a result of the failure of defendant, Geico, and each of them, to make payments of the benefits due plaintiff under the policy, plaintiff incurred storage charges for the 2015 Mercedes-Benz and 2015 BMW I8, which at the customary rate for luxury vehicles is determined as $125.00 per day for the Mercedes-Benz, and

$200.00 for the BMW. Plaintiff was forced to pay storage per day for the Mercedes-Benz from August 19, 2017 through January 31, 2018, a total of 166 days at $125.00, for a total payment of $20,750.00.

26. As a result of the failure and refusal of Geico to make payment on the 2015 BMW, plaintiff was required to make payment for storage from August 19, 2017 through April 2, 2018, for a total of 226 days at the daily rate of $200.00 per day, for a total of $45,200.00.

27. Plaintiff is informed and believes and thereon alleges that the policy included car rental benefits for certain periods of time in the event of damage or loss to the vehicle to which plaintiff was entitled, but which at no time did Geico act to make plaintiff aware of the amount or duration and, in fact, Geico at no time has paid any amount, which remains to be determined.

28. Thereafter in or about September, 2017, defendant Geico, and Does 1 through 30, and each of them, without prior notice to plaintiff, terminated any and all acts of investigation, adjustment or resolution relating to the claims on the BMW, Mercedes-Benz, and Range Rover vehicles, and retained legal counsel to enforce provisions under the policy, including multiple demands for Examinations Under Oath and for Production of Documents, all the while failing to thoroughly investigate and adjust the amount of property damage to each of the insured and damaged vehicles.

29. The acts of defendant Geico's legal counsel, including multiple Examinations Under Oath, continued through and including April, 2018, after which having established no basis to deny coverage or preclude payment of loss benefit damages due plaintiff for the damage claims to the subject vehicles, defendant Geico, for the first time, issued payment on any of the loss claims on May 1, 2018.

30. As hereinabove alleged from and after May 16, 2018, despite the dates of loss being July 23, 2017 and August 18th and 19th, 2017, no further benefits in any amount have been offered or paid to resolve the property loss claims that, as of this date, remain open.

31. At no time since May 16, 2018, has Geico ever formally stated a denial in writing sent to the insured giving notice that the claim had reached a final determination by Geico, and

1 | that the amounts paid were the only amounts that would be paid, and that the tolling period
2 | provided pursuant to *Prudential LMI vs. Superior Court*, based on the Notice of Suit clause, was
3 | ending.

4 |       32.    Despite the efforts of plaintiff and her representatives acting on her behalf to communicate with defendant Geico and Does 1 through 30, and each of them, from and after May 16, 2018, plaintiff has been unsuccessful and, since July, 2018, has received no responsive communication from anyone acting on behalf of Geico.

      33.    On or about November 14, 2018, plaintiff retained the services of her Attorney, Jeff A. Lesser, Esq., to represent her interests in making contact to defendant Geico, and obtaining from them some communication so that the outstanding and not fully adjusted loss claims could be adjusted and resolved.

      34.    Thereafter, on several occasions, Attorney Lesser communicated in writing, both to the coverage attorney utilized by Geico during the claim, and to the adjuster last assigned to the loss to solicit a communication regarding the status of the claim and to enter into a course of resolution as to each of the outstanding loss claims. Despite the best efforts of counsel, no communication whatsoever has been received through the date of this lawsuit from defendant Geico, or Does 1 through 30.

      35.    Defendants Geico, and each of them, have breached their obligations pursuant to the written Contract of Insurance between plaintiff Muradian and defendants, and each of them, in that defendants failed and refused to thoroughly and promptly investigate, adjust and resolve plaintiff's claim, and to do so in a timely manner; have failed to pay benefits to plaintiff pursuant to the terms of the written contract upon presentation of claim, and plaintiff establishing her entitlement to the benefits pursuant to the terms of the policy in effect as between plaintiff and defendants; terminated any acts of adjustment and employed legal counsel, all for the purpose of acting in ways to frustrate, delay, and deny payment of benefits to plaintiff, which benefits were paid, but only to the extent to which Geico had engaged in a partial investigation commencing May 1st through May 16th, 2018, the effect of which was to cause plaintiff to pay from her own funds the costs of repair and restoration of the Mercedes-

---
COMPLAINT FOR DAMAGES FOR BREACH OF INSURANCE CONTRACT; BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 14

Benz, so that it could be returned at the end of a lease, and, thereafter, with her own funds, repair and restore the BMW, all of which were required to be placed in safe storage and incur daily storage charges consistent with those applied to high-end and exotic automobiles. Defendants have further Breached the Contract in that despite having concluded whatever investigation they intended to engage in to establish whatever they intended to, by demanding documents and taking multiple Examinations Under Oath, after the conclusion of these, defendant Geico paid between May 1st and May 16th, insurance policy benefits that had been due the insured since shortly after the dates of loss of July 23, 2017 and August 18th - August 19th, 2017, but withheld without reason or good cause from plaintiff. Thereafter, despite having failed to engage in a thorough investigation of the subject vehicles, Geico made no effort and assigned no person, entity or adjuster to re-inspect the vehicles to determine the full extent of the damage and loss to each vehicle and ultimately terminated any and all communication with plaintiff.

36. Based on a termination of the communication by defendant Geico with plaintiffs after July, 2018, it became necessary for plaintiff to retain legal counsel to attempt to communicate with defendant Geico, which, despite several efforts at communications in writing directed to Geico's coverage counsel and Geico's assigned adjuster, were unsuccessful in obtaining any response at all from defendant Geico. As a consequence of the lack of response, and the failure of performance of defendant Geico, plaintiff has been forced to file this lawsuit.

37. Plaintiff believes that defendants and each of them have Breached their Contract with plaintiff in other ways, the exact nature and extent of which is not currently known to plaintiff who, therefore, reserves the right to amend this Complaint when the nature and extent of the breaches of contract engaged in by defendants are known.

38. As a direct and proximate result of the Breach of Contract by defendants and each of them as alleged herein, plaintiff has been deprived of the benefits due her under the contract, which benefits are in an amount in excess of $122,238.45. Plaintiff has also suffered the loss of use of the subject vehicles, and the loss of use and benefit of the insurance loss

///

proceeds payable to her but without reason and wrongfully withheld by defendants from each of them, from plaintiff.

## II

## SECOND CAUSE OF ACTION

### (For Bad Faith against Defendants, Geico General Insurance Company and Does 1 through 50, Inclusive)

COMES NOW plaintiff and for a Cause of Action against defendants, Geico General Insurance Company, and Does 1 through 50, Inclusive, for Breach of the Duty of Good Faith and Fair Dealing and alleges:

39. Plaintiff hereby incorporates Paragraphs 1 through 34 of the First Cause of Action with the same force and effect as if said paragraphs had been set out herein at length.

40. Prior to and on July 23, 2017, defendants and each of them had issued an insurance policy to plaintiff, which policy was in effect on each date of loss, July 23, 2017, August 18, 2017, and August 19, 2017. A true and correct copy of said policy is attached hereto, designated as Exhibit "A" and incorporated by reference herein. On the dates of loss herein, the policy was in full force and effect.

41. As hereinabove alleged, plaintiff has performed all obligations and paid all premiums due, except for those obligations and payments made impracticable or impossible by the acts or omissions of defendants and each of them.

42. As hereinabove alleged, on July 23, 2017, two of plaintiff's vehicles, insured by the policy of insurance, a 2015 Mercedes-Benz, and a 2015 BMW sustained damage and loss due to collision, a third vehicle, a 2010 Range Rover, suffered a collision loss on August 18, 2017, and was rendered a total loss, and on August 19, 2017, both the BMW and Mercedes-Benz vehicles were heavily vandalized, sustaining substantial damage rendering the vehicles undriveable. The losses sustained as a result of these incidents were fully insured under the policy of insurance on the date of loss.

///
///

COMPLAINT FOR DAMAGES FOR BREACH OF INSURANCE CONTRACT; BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

Exhibit A
Page 16

11

43. As hereinabove alleged, thereafter, plaintiff presented a Notice of Claim of Loss to defendants for the losses and damages sustained which were compensable under the policy.

44. As hereinabove alleged, defendants and each of them, despite their obligation to thoroughly and timely investigate, adjust and resolve plaintiff's claim, otherwise acted to frustrate, delay and deny any investigation or resolution or payment of benefits to plaintiff.

45. Defendants Geico, and each of them, have breached the Implied Covenant of Good Faith and Fair Dealing arising from the written Contract of Insurance between plaintiff Muradian and defendants, and each of them, in that defendants failed and refused to thoroughly and promptly investigate, adjust and resolve plaintiff's claim, and to do so in a thorough and timely manner; withheld unreasonably, and have failed to pay benefits to plaintiff pursuant to the terms of the written contract upon presentation of claim, and plaintiff establishing her entitlement to the benefits pursuant to the terms of the policy in effect as between plaintiff and defendants; terminated any acts of adjustment and employed legal counsel, all for the purpose of acting in ways to frustrate, delay, and deny payment of benefits to plaintiff, which benefits were paid, but only to the extent to which Geico had engaged in a partial investigation commencing May 1st through May 16th, 2018, the effect of which was to cause plaintiff to pay from her own funds the costs of repair and restoration of the Mercedes-Benz, so that it could be returned at the end of a lease, and, thereafter, with her own funds, repair and restore the BMW, each of which were required to be placed in safe storage and incur daily storage charges consistent with those applied to high-end and exotic automobiles. Defendants have further Breached the Contract in that despite having concluded whatever investigation they intended to engage in to establish whatever they intended to, by demanding documents and taking multiple Examinations Under Oath, after the conclusion of these, defendant Geico paid between May 1st and May 16th, insurance policy benefits that had been due the insured since shortly after the dates of loss of July 23, 2017 and August 18th - August 19th, 2017, but has withheld without reason or good cause from plaintiff the full amount of loss benefits due plaintiff. Thereafter, despite having failed to engage in a thorough investigation of the subject vehicles, Geico made no effort and assigned no person, entity or adjuster to re-inspect the vehicles to determine the

full extent of the damage and loss to each vehicle and ultimately terminated any and all communication with plaintiff.

46. Defendants and each of them have further Breached their Duty of Good Faith and Fair Dealing owed to plaintiff in the following respects:

a) Failing to reasonably investigate and process plaintiff's claim for loss benefits under said Contract of Insurance;

b) Failing to pay proceeds to plaintiff at a time when defendants and each of them knew that plaintiffs were entitled to said payments under the terms of said Contract of Insurance;

c) Failing to pay and continuing to fail to pay loss proceeds pursuant to said claim at a time when defendants had insufficient information within their possession to justify said failure and refusal to pay;

d) Not attempting in Good Faith to effectuate a prompt, fair and equitable settlement of plaintiffs's claim for loss benefits when liability had become reasonably clear;

e) Asserting defenses to the payment of plaintiffs's claim when defendants knew, or in the exercise of reasonable care should had known, that the defenses raised were frivolous, all for the purpose of denying payment to plaintiff;

f) By their acts and omissions to act causing plaintiff to be without, and continue to be without the use of insurance loss proceeds due and owing to plaintiff, thereby causing plaintiff to incur and continue to incur expenses and other financial costs, all at a time when defendants knew plaintiff's claim to be payable;

g) By causing plaintiff to commence litigation to enforce her rights and obtain the benefit of payments due her pursuant to the terms of said policy of insurance, and thereby incur additional expenses including attorneys fees and costs, all with the knowledge that said litigation would proceed for a substantial period of time, and at a substantial expense to plaintiff, where defendants, and each of them, knew that due to their substantial size and financial strength, they would benefit by causing plaintiff to incur expenses and experience delay, all of which acts were done by defendants and each of them with the knowledge of the defendants that plaintiff has

///

1 sustained a loss compensable under the policy, and that benefits were due and payable by
2 defendants and each of them to plaintiff;

3     h) By failing, since July, 2019, to communicate, or respond to communications,
4 directed to by plaintiff and her representatives as to the status of her claim.

5     47. Plaintiff is informed and believes and thereon alleges that defendants and each of
6 them have breached their duty of Good Faith and Fair Dealing owed to plaintiffs by other acts or
7 omissions of which plaintiff is presently unaware. Plaintiff will seek leave of Court to amend this
8 Complaint at such time as plaintiff discovers the other acts and omissions of said defendants and
9 each of them constituting such Breach.

10     48. As a direct and proximate result of the Breach of the Implied Covenant of Good
11 Faith and Fair Dealing by defendants and each of them as alleged herein, plaintiff has been
12 deprived of the benefits due it under the policy of insurance, which benefits for damage, loss and
13 destruction to the subject vehicles is in excess of $122,238.45.

14     49. As a direct and proximate result of the Breach of the Implied Covenant of Good
15 Faith and Fair Dealing by defendants and each of them as alleged herein, plaintiff has been
16 deprived of the use and benefits of the proceeds due her under the policy of insurance, the full
17 extent of which has not been calculated as of this date and, therefore, plaintiff reserves the right
18 to amend this Complaint.

19     50. As a further direct and proximate result of the Breach of the Implied Covenant of
20 Good Faith and Fair Dealing by defendants and each of them as hereinabove alleged, plaintiff
21 has suffered tort damages as available to compensate for her damages, injuries and losses, the
22 amount of which has not been ascertained as of this date and, therefore, plaintiff reserves the
23 right to amend this Complaint.

24     51. As a further direct and proximate result of the wrongful conduct of defendants and
25 each of them, plaintiff has suffered financial and other damages, all to plaintiff's damage in an
26 amount within the jurisdiction of the Superior Court, according to proof.
27 ///
28 ///

COMPLAINT FOR DAMAGES FOR BREACH OF INSURANCE CONTRACT; BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

14

52. As a further direct and proximate result of the wrongful conduct of defendants and each of them, plaintiff has been forced to incur and will continue to incur attorneys fees, costs and expenses relating to litigation necessary to obtain payment of benefits due pursuant to the policy, the exact amount of which damages are not currently known to plaintiff who, therefore, reserves the right to amend this Complaint when the same has been ascertained.

53. The conduct of defendants and each of them described herein was done with a conscious disregard of plaintiff's rights, and with the intent to injure, annoy and oppress plaintiff such as to constitute oppression, fraud or malice under *California Civil Code* Section 3294 entitling plaintiff to punitive damages in an amount appropriate to punish or set an example of said defendants and each of them.

WHEREFORE, plaintiff prays judgment against defendants, and each of them, as follows:

**FIRST CAUSE OF ACTION**

1. Damages for failure to provide benefits and payment of proceeds under the subject Contract of Insurance in excess of $122,000.00 in a sum to be determined at time of Trial;

2. General damages for Breach of Contract, including interest at the legal rate on the amount of benefits due plaintiff under the insurance contract;

3. For costs of suit incurred herein;

4. For such other and further relief as this Court may deem just and proper.

**SECOND CAUSE OF ACTION**

1. Damages for failure to provide benefits and payment of proceeds under the subject Contract of Insurance, including financial damages, attorneys fees and expenses relating to recovery of benefits due pursuant to the policy of insurance;

2. General Tort damages for mental and emotional distress and other damages as a result of the wrongful withholding of benefits in a sum within the jurisdiction of the Superior Court, according to proof;

3. Punitive and exemplary damages in an amount appropriate to punish or set an example of defendants;

4. For costs of suit incurred herein; and

5. For such other and further relief as this Court deems just and proper.

## JURY TRIAL

Plaintiff requests Trial by Jury.

DATED: April 5, 2019

_____
JEFF A. LESSER, ESQ.
Attorney for Plaintiff,
Janet K. Muradian

pld1(JanetMuradianComplaint)